CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
5/27/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| ANTWHON SUITER, )  <br>    Plaintiff, ) | |
| ) | Civil Action No. 5:23-cv-00062 |
| v. ) | |
| ) | MEMORANDUM OPINION |
| DEPUTY C.J. TAYLOR, ) | |
|    Defendant. ) | By:   Joel C. Hoppe |
| ) | United States Magistrate Judge |

This matter is before the Court on Defendant Deputy C.J. Taylor's Motion for Stay. ECF No. 30. Taylor, appearing through counsel, asks the Court to "stay these civil proceedings during the pendency of [his] criminal case" because the proceedings are related and substantially similar, and the relevant factors weigh in favor of a stay. Def.'s Mot. 1; *see generally* Def.'s Br. in Supp. 3–8, ECF No. 31; Def.'s Suppl. Br. in Supp. 2–6 ("Def.'s Suppl. Br."), ECF No. 56. Plaintiff Antwhon Suiter, appearing pro se, opposes the motion.[1] Pl.'s Opp'n, ECF No. 35; Pl.'s Suppl. Br. in Opp'n ("Pl.'s Suppl. Br."), ECF No. 57. Taylor's request has been fully briefed, ECF Nos. 30–31, 33–36, 56–57, and argued, ECF No. 53. For the reasons discussed below, the Court will grant Taylor's Motion for Stay, ECF No. 30, and stay the case pending further order of the Court.

---

[1] Suiter filed three oppositions, ECF Nos. 33–35, before Taylor's deadline to reply, ECF No. 36. His first opposition argues that Taylor's motion "is a transparent attempt to delay and stall the proceedings in this civil case" and "is a waste of the court[']s resources and undermines the judicial process and effectively denies [Suiter] the right to have his claims heard in a timely manner." Pl.'s First Opp'n 1–2, ECF No. 33. His second opposition likewise argues that Taylor's "only purpose" in filing this motion "is to [u]ndermine [j]ustice and a [c]ivil [p]roceeding without any delays," and that Suiter's "strong interest in proceeding with the case without delay" outweighs "the minimal prejudice to [Taylor]'s rights." *See* Pl.'s Second Opp'n 1–2, ECF No. 34. His third opposition argues that the two cases are not substantially similar and addresses the factors that the Fourth Circuit has deemed relevant. *See generally* Pl.'s Third Opp'n 1–7 ("Pl.'s Opp'n"), ECF No. 35. Taylor's arguments in the first two oppositions are undeveloped and unpersuasive. No evidence suggests that Taylor filed this motion to delay the case. Accordingly, the Court will focus on Suiter's third opposition, ECF No. 35.

1

I. Legal Framework

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A court considering a motion to stay "has wide discretion to 'weigh competing interests and maintain an even balance.'" *Dragas Mgmt. Corp. v. The Hanover Ins. Co.*, No. 2:10-cv-547, 2012 WL 12896235, at *1 (E.D. Va. Mar. 5, 2012) (quoting *Landis*, 299 U.S. at 255). Where, as here, a party seeks to stay a civil case while a parallel criminal case is pending, a "threshold factor" for the stay is whether there is "a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues." *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 531 (S.D. W. Va. 2005); *accord United States v. Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d 408, 413–14 (M.D.N.C. 2022). If there is, then the court weighs the following factors: "(1) [i]nterest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation, and (5) the public interest." *Skinner v. Armet Armored Vehicles, Inc.*, No. 4:12-cv-45, 2015 WL 540156, at *4 (W.D. Va. Feb. 10, 2015) (Kiser, J.) (quoting *In re Mid-Atl. Antitrust Litig.*, 92 F.R.D. 358, 359 (D. Md. 1981)). "The party seeking the stay must justify it by clear and convincing circumstances outweighing the potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *accord Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 525 (E.D. Va. 2018) (quoting *Williford*, 715 F.2d at 127). "While the burden is a high one, a court may stay civil proceedings when there is a risk of self-incrimination by a party." *Transamerica Life Ins. Co. v. Kaufmann*, No. 5:20-cv-59, 2020 WL 7083968, at *2 (W.D. Va. Dec. 3, 2020)

(Urbanski, J.) (citing *In re Grand Jury Subpoenas Duces Tecum Special Grand Jury, Sept. 1986 Term*, 659 F. Supp. 628, 634 (D. Md. 1987)).

II.  Background

In August 2023, Suiter filed a Virginia criminal complaint against Taylor alleging that:

> On August 31st 2022 I was recording a traffic stop and Deputy CJ Taylor approached me aggressively throwing Chris Shifflett on the ground, and grabbed my phone and [h]and for no reason. When CJ Taylor approached and grabbed me, he caused my fingers to be sore after squeezing my fingers when he grabbed my phone.

Def.'s Br. in Supp., Ex. A, at 2, ECF No. 31-1. Taylor was charged with misdemeanor assault and battery. *Id.* at 1.

Roughly two months later, in October 2023, Suiter filed this civil action against Taylor[2] alleging violations of Suiter's rights under the First, Fourth, and Fourteenth Amendments. Compl. ¶¶ 41–62. His Verified Complaint alleges that, on August 31, 2022, Suiter was sitting in his car when he saw Taylor—an Augusta County Sheriff's Deputy—"approaching from the opposite direction with no emergency lights activated and driving in the lane of oncoming traffic." *Id.* ¶¶ 16, 18–19. After noticing a "[t]raffic stop/[p]olice activity," Suiter began recording with his phone. *Id.* ¶¶ 2, 19. He was "well over" 100 feet away. *Id.* ¶ 18. "[W]ithin minutes" of starting the recording, Taylor approached Suiter. *Id.* ¶ 19. Taylor "quickly and forcibly grabbed [Suiter's] hands and phone in an attempt to stop [him] from [r]ecording," and "squeezed [his] hands" in the process, which caused the recording to stop. *Id.* ¶¶ 19–20, 36. He threatened to arrest Suiter and confiscate his phone "as evidence of interfering with an investigation," *id.* ¶ 17, and "ordered an officer to arrest and cuff" him, *id.* ¶ 20. Afterwards,

---

[2] Suiter's Complaint also named as Defendants the August County Sheriff's Department, Commonwealth of Virginia, and Commonwealth of Virginia Department of State Police. *See generally* Compl., ECF No. 2. Suiter moved to dismiss these Defendants, ECF No. 12, which the Honorable Michael F. Urbanski granted pursuant to Rule 41(a)(2), ECF No. 19.

3

Suiter's "fingers were aching for weeks," and he "significantly suffered mentally and emotionally." *Id.* ¶¶ 34–35. A jury trial in this case is set for December 2025. ECF No. 44.

Taylor's state-court criminal prosecution remained pending as of September 2024. On September 3, Taylor filed the present motion for stay. He argues that he has met the "threshold factor for a stay," because his criminal prosecution and this civil case are related and involve substantially similar issues. Def.'s Br. in Supp. 3–4. As support, Taylor asserts that the underlying factual allegations in both cases are "identical." *See id.* at 4. Taylor discusses the five factors that courts consider when determining "whether to stay civil proceedings in deference to parallel criminal proceedings," *id.* at 4 (citing *United States SEC v. Woodard*, No. 2:13-cv-16, 2014 WL 61398, at *4–5, *7 (E.D. Va. Jan. 6, 2014)), and argues that they weigh in favor of a stay, *id.* at 4–8.

Suiter opposes the stay. Pl.'s Opp'n 1–7. He argues that that the civil and criminal cases "[l]ack sufficient overlap" because they "involve different legal standards and issues." *Id.* at 4–5. Suiter also argues that the balancing of interests weighs against a stay. *Id.* at 5–7.

On October 21, 2024, Suiter filed a letter in which he represented to the Court that "the criminal case against Mr. Taylor has been resolved . . . with the Circuit Court in Staunton, Virginia, finding Mr. Taylor guilty on two counts of Assault and Battery. . . . The Staunton Circuit Court accepted a plea deal, affirming Mr. Taylor's guilt and allowing him to participate in the First Offenders Program." ECF No. 45 (citing *Commonwealth v. Taylor*, Case Nos. CR24-54-01, CR24-54-02 (Staunton Cir. Ct.)).

On November 1, the undersigned held a hearing on the Motion for Stay. ECF No. 49; *see also* ECF Nos. 53, 54. The parties presented conflicting accounts of the status of Taylor's criminal case. As a result, the Court ordered supplemental briefing, directing Taylor to file a

4

supplemental brief and relevant court records from his criminal case and allowing Suiter to file one response. Min. Entry, ECF No. 53.

Taylor filed his supplemental brief and attached as an exhibit the Memorandum of Plea Agreement, dated October 10, 2024, from his criminal case. Def.'s Suppl. Br., Ex. A, at 1, ECF No. 56-1 (Plea Agreement, *Commonwealth v. Taylor*, Case Nos. CR24-54-01, CR-24-54-02 (Staunton Cir. Ct.)). The plea agreement states that, as to each count of misdemeanor assault and battery, Taylor "will enter a plea of not guilty to this charge, but will stipulate that there is sufficient evidence for a conviction." *Id.* The plea agreement, however, deferred a final disposition for twelve months under Virginia Code § 19.2-298.02.[3] *Id.* "During that twelve [] month period, [Taylor] must: 1) Keep the peace, be of good behavior and obey the law; and 2) Pay the court costs associated with this prosecution." *Id.* After twelve months, the circuit court will hold a review hearing. *See id.* "If [Taylor] has otherwise complied with the above listed conditions, the charge against him shall be dismissed by further order of the [c]ourt without the need of any parties being present. Both parties agree that this will be dismissed for purposes of expungement under Virginia Code § 19.2-298.02(D)." *Id.* The plea agreement "represents the entire agreement of the parties." *Id.* It is signed by Taylor, Taylor's criminal-defense attorney, the commonwealth's attorney, and the presiding circuit court judge. *See id.*

---

[3] Under Va. Code § 19.2-298.02 (Deferred disposition in a criminal case):

> [a] trial court presiding in a criminal case may, with the agreement of the defendant and the Commonwealth, after any plea or trial, . . . defer entry of a conviction order, if none, or defer entry of a final order, and continue the case for final disposition, on such reasonable terms and conditions as may be agreed upon by the parties and placed on the record, or if there is no agreement, as may be imposed by the court. Final disposition may include (a) conviction of the original charge, (b) conviction of an alternative charge, or (c) dismissal of the proceedings.

If the defendant violates a term or condition of the deferred disposition agreement, "the court may enter an adjudication of guilt, if not already entered, and make any final disposition of the case provided by subsection A." Va. Code § 19.2-298.02(b). If the defendant fulfills the terms and conditions of the deferred disposition agreement, "the court shall adjudicate the matter consistent with the agreement of the parties or, if none, by conviction of an alternative charge or dismissal of the case." *Id.*

Taylor argues that the plea agreement supports his request for a stay because there has been "[n]o finding of guilt." Def.'s Suppl. Br. 3. According to Taylor, the criminal case has "not yet been dismissed" and "[i]t is not guaranteed that [it] will be dismissed as the agreement to have the charges dismissed is conditional. If those conditions are not met, [Taylor] would be exposed to the possibility of being sentenced by the criminal trial court." *Id.* at 4. Thus, Taylor's "Fifth Amendment rights are still at risk." *Id.* Taylor also argues that this Court should not "permit this case to move forward in pieces" because it "could result in extensive litigation and motions practice as the parties and Court try to grapple with which parts of the case and which discovery requests implicate [Taylor]'s Fifth Amendment rights." *Id.* at 5. Taylor acknowledges that the stay would delay "this case longer than expected," but notes that "such a delay is not without precedent in this district." *Id.* at 6 (citing *Booth v. Higgins*, No. 7:19-cv-429, ECF No. 41 (W.D. Va. Aug. 15, 2020)).

Suiter filed his supplemental brief in opposition, arguing that Taylor's motion for stay has "been rendered moot by [Taylor]'s plea agreement and deferred disposition." Pl.'s Suppl. Br. 2. Suiter contends that Taylor's "criminal trial has concluded. The Plea Agreement precludes further trial proceedings, thus nullifying any" concern regarding his Fifth Amendment rights. *Id.* Suiter asserts that Taylor's Fifth Amendment claim is "premature" because "the possibility of incrimination is speculative and conditional upon non-compliance with the deferred disposition terms." *Id.* at 6. Suiter also asserts that staying the case would significantly prejudice him and maintains that the balance of interests weighs against a stay. *Id.* at 7–10. Suiter contends that discovery can proceed without unduly prejudicing Taylor. *Id.*

III.  Discussion

Taylor seeks to stay all proceedings in this case pending resolution of his state court criminal prosecution because the cases are related and substantially similar and the relevant

factors weigh in favor of stay. Def.'s Br. in Supp. 3–7: Def.'s Suppl. Br. 1–6. Suiter opposes the stay, arguing that the cases do not sufficiently overlap and the relevant factors weigh against a stay. Pl.'s Opp'n 2–7; Pl.'s Suppl. Br. 1–11.

Taylor has shown that a stay is warranted under the circumstances.

A.   *Relatedness*

Taylor argues that the issues in the civil case "are identical to those raised in the criminal case pending against [him]." Def.'s Br. in Supp. 3–4. Suiter argues that that the cases "[l]ack sufficient overlap" because they "involve different legal standards and issues. The criminal case involves allegations of assault and battery under state law, while the civil case involves claims under 42 U.S.C. § 1983 for excessive force and violations of constitutional rights." Pl.'s Opp'n 4–5. Here, Taylor has shown that the cases are related and substantially similar. The allegations in this case are identical to the allegations in Suiter's criminal complaint. Both actions arise from Taylor's alleged use of physical force against Suiter while Suiter was recording a traffic stop on August 31, 2022. *Compare* Compl. ¶¶ 16–20, *with* Def.'s Br. in Supp., Ex. A, at 2 (criminal complaint). Accordingly, the cases are related and substantially similar.

B.   *Plaintiff's interest in proceeding expeditiously balanced against prejudice to plaintiff caused by delay*

Taylor initially argued that Suiter "will not be prejudiced by a stay" because "the need for a stay may be less than two months." Def.'s Br. in Supp. 4–5 (citing *Doe v. City of Gauley Bridge*, No. 2:21-cv-491, 2022 WL 16554698, at *3–4 (S.D. W. Va. Oct. 31, 2022)). In his supplemental brief, Taylor acknowledges that the stay would now "be longer than expected," but still argues that a stay is warranted. Def.'s Suppl. Br. 6. Suiter contends that he "has a strong interest in the timely resolution of his claims. Delays in civil proceedings can significantly impact [his] ability to pursue justice." Pl.'s Opp'n 5.

7

The Court finds that this factor weighs slightly in favor of denying the stay. Suiter "certainly has an interest in proceeding expeditiously." *Skinner*, 2015 WL 540156, at *4. And "[t]he passage of time can certainly prejudice" him. *Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d at 414. However, Suiter has not identified any particular prejudice that he may suffer other than delay itself. Furthermore, "prejudice is not determinative" and "must be weighed against any burden on" Taylor if this civil case goes forward while his nearly identical criminal action is pending. *Id.* at 415.

### C. *Burden on defendant*

Taylor contends he will be prejudiced if this civil case proceeds. Def.'s Br. in Supp. 3–7. Taylor asserts that the plea agreement's deferred disposition means that his "Fifth Amendment rights are still at risk of being violated if the case proceeds." Def.'s Suppl. Br. 3. Taylor argues that, if he waives his Fifth Amendment rights in this case, he is vulnerable to cross-examination in the criminal case. Def.'s Br. in Supp. 5–6; Def.'s Suppl. Br. 2–4. However, if he invokes his Fifth Amendment rights in this case, he is vulnerable to an adverse inference for refusing to testify. Def.'s Br. in Supp. 5; Def.'s Suppl. Br. 2–3. Taylor also argues that he will face hardship in that he "may be unable to develop the evidence necessary to establish defenses to this civil case [because] the evidence against him lies in the hands of the state prosecutor's files in the criminal case and is otherwise unavailable until the conclusion of the criminal case." Def.'s Br. in Supp. 6. Suiter originally acknowledged that Taylor "may face some hardship if required to proceed with the civil case." Pl.'s Opp'n 6. However, after the plea agreement, Suiter contends that Taylor's "criminal trial has concluded;" therefore, any concern regarding Taylor's Fifth Amendment rights is nullified. Pl.'s Suppl. Br. 2.

Taylor's Fifth Amendment right against compelled self-incrimination is still at risk. There is "no basis for assertion of the [Fifth Amendment]" where "the sentence has been fixed

8

and the judgment of conviction has become final." *Mitchell v. United States*, 526 U.S. 314, 326 (1999). However, "[w]here the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id.* Here, the final judgment of conviction has been deferred and Taylor has not been sentenced in Staunton Circuit Court. Under the plea agreement and Virginia Code § 19.2-298.02, Taylor may still receive a conviction for the assault charge, or it may be dismissed. Taylor's criminal prosecution has not concluded. Accordingly, Taylor's Fifth Amendment rights are implicated if this case were to proceed. As such, Taylor may be unable to participate fully in discovery or defend himself in this civil case without waiving his Fifth Amendment privilege against self-incrimination. "This potential burden is serious[.]" *Doe*, 2022 WL 16554698, at *4. Thus, this factor "strongly favors a stay." *Ashworth*, 229 F.R.D. at 531.

    D.    *Convenience to the Court*

Taylor argues that "[n]either this Court nor the court hearing [] Taylor's criminal case would be significantly inconvenienced." Def.'s Br. in Supp. 7. Suiter does not address this factor. *See generally* Pl.'s Opp'n 4–7; Pl.'s Suppl. Br. 1–11.

Convenience to the Court favors a stay. As discussed above, Suiter's allegations against Taylor in the criminal complaint are identical to those in the civil complaint. Both relate to the alleged incident on August 31, 2022. Common questions of fact exist. "[T]he resolution of the criminal case may later streamline discovery in th[is] [] case." *Ashworth*, 229 F.R.D. at 532 (citation and internal quotation marks omitted). Moreover, resolution of any criminal case might increase the chances of settlement in the civil action. *See Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d at 417. "[I]n light of the complete overlap between the criminal and civil cases, the Court finds a stay will conserve judicial resources and potentially resolve the ultimate issues as

9

to liability." *Krikstan v. Maryland*, Civ. No. GLR-24-2001, 2025 WL 1079218, at *2 (D. Md. Aug. 10, 2025). Accordingly, convenience to the Court favors a stay.

E. *Interests of persons not party to the civil litigation*

Taylor notes that "there appear to be no third-party interests implicated here." Def.'s Br. in Supp. 7. Suiter does not address this factor. Pl.'s Opp'n 4–7; *see generally* Pl.'s Suppl. Br. 1–11. "No party raises this as a major factor, and the [C]ourt does not discern that it weighs for or against granting a stay." *Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d at 417.

F. *Public interest*

Taylor acknowledges that the public has "an interest in the prompt resolution of civil cases," but argues that this interest is outweighed by his Fifth Amendment right against compelled self-incrimination. *See* Def.'s Br. in Supp. 7. Suiter argues that the public has an interest in the "timely adjudication of civil rights claims, and that delays can undermine public confidence in the justice system and impede accountability for alleged misconduct." Pl.'s Opp'n 6.

"The public clearly has an interest in the just and constitutional resolution of disputes with minimal delay," but "the public also has an interest in protecting the constitutional rights of criminal defendants." *Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d at 417–18 (citations omitted). "This factor weighs against the grant of the stay of a civil action where no criminal investigation has begun." *Id.* Here, Taylor has already been charged with misdemeanor assault and battery. Taylor's criminal case is pending a final judgment. Given the public interest in protecting the constitutional rights of criminal defendants, this factor weighs in favor of a stay.

G. *Discovery*

Taylor argues that, if the Court permitted discovery to proceed, it "could result in extensive litigation and motions practice as the parties and Court try to grapple with which parts

10

of the case and which discovery requests implicate [Taylor]'s Fifth Amendment rights." Def.'s Suppl. Br. 5. Suiter contends that discovery "can be structured to mitigate any prejudice to [Taylor] while allowing the case to proceed." Pl.'s Suppl. Br. 7. Specifically, Suiter argues that "[t]he Court could implement phased discovery" where he could "pursue relevant non-testimonial evidence," or the Court could enter a protective order that "limit[s] the use of any discovery materials in related criminal proceedings." *Id.*

Here, "discovery would create ancillary litigation concerning the proper scope of discovery, negating the positive impact a stay would have on considerations of judicial economy." *Ashworth*, 229 F.R.D. at 532. This case is relatively straight forward, and it involves only a few witnesses, primarily the parties. A recording from Suiter's phone may show much of the encounter. Thus, the relevant evidence is not likely to dimmish over time. And as stated above, allowing the criminal case to conclude may streamline discovery in this case. It would not be an efficient use of judicial resources for discovery to proceed under these circumstances. *See id.*

IV. Conclusion

Balancing the relevant factors as discussed above, the Court finds that Taylor has presented clear and convincing circumstances that warrant a stay of this civil case pending final disposition of his criminal case. Accordingly, the Court will grant Taylor's motion for stay, ECF No. 30, and stay the case pending further order of the Court.

Furthermore, Suiter's motion for a hearing, ECF No. 59, will be denied. The Court already held one hearing, and another hearing is not necessary to resolve the motion. Taylor's motion to strike Suiter's motion for a hearing, ECF No. 60, is moot. Suiter's motion to hold a scheduling conference, ECF No. 63, will also be denied. Because the case is stayed, holding a

scheduling conference is premature.[4] A separate order will enter.

ENTER: May 27, 2025

Joel C. Hoppe
U.S. Magistrate Judge

---

[4] On May 5, 2025, Suiter sent an email to my Chambers requesting an informal hearing on the motion to stay and his other pending motions. Because those matters are before the Court by formal motion, an informal hearing would be duplicative and is unnecessary.